**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Kereen Donyell Lee, Appellant.

Appellate Case No. 2024-000745

———————

Appeal From Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-369
Heard June 9, 2026 – Filed July 15, 2026

———————

**AFFIRMED**

———————

Deputy Chief Attorney for Capital Appeals David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards, both of Columbia, and Solicitor Cynthia Smith Crick, of Greenville, all for Respondent.

———————

**PER CURIAM:** Kereen Lee (Appellant) was indicted for attempted criminal sexual conduct with a young girl (Minor). He was convicted as indicted and sentenced to life without parole under the three-strikes statute. *See* S.C. Code Ann. § 17-25-45

(2003 & Supp. 2007). Appellant challenges several evidentiary and procedural rulings from trial. He contends the circuit court erred in allowing Minor's recorded statement and a portion of his own recorded statement into evidence; denying his motion for a mistrial; and denying his request for an individualized sentencing hearing. Because none of the alleged errors warrant reversal, we affirm.

We begin with Appellant's challenge to Minor's recorded statement. Under section 17-23-175 of the South Carolina Code (2014), a child's out-of-court statement is admissible if it is recorded on audio and video and other requirements are satisfied. The video requirement is not a technicality; it reflects a legislative judgment that jurors must be able to assess both the child's words and demeanor if they are to fully evaluate the out-of-court statement. *See State v. White*, 416 S.C. 135, 137, 784 S.E.2d 695, 696 (Ct. App. 2016) (explaining the statute's purpose is to give "jurors direct access—audio and visual—to the victim's statements to enable the jurors to more accurately evaluate the victim's credibility"); *see also Liberty Mut. Ins. Co. v. S.C. Second Inj. Fund*, 363 S.C. 612, 622, 611 S.E.2d 297, 302 (Ct. App. 2005) ("The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly.").

Here, Minor is not visible for a substantial portion of her recorded interview. Appellant contends that, unlike in *White*, this deficiency was not addressed in a manner consistent with the statute's purpose. *See White*, 416 S.C. at 138, 784 S.E.2d at 696 (explaining the trial court did not abuse its discretion in admitting the video or by allowing the jurors to use a transcript because the trial court instructed the jury that they must evaluate the recording itself, not the transcript). Appellant also contends the exception in subsection (F) does not apply because the necessary equipment for a complete recording was plainly available. *See* § 17-23-175(F) (providing an unrecorded statement may still be admissible if the proponent of the evidence establishes "the necessary visual and audio recording equipment was unavailable").

The merits of this argument are not before us. The parties argued this issue before the trial began, but when the State formally moved the video into evidence, defense counsel said there was no objection. Precedent establishes that the lack of a renewed objection qualifies as waiver and that when counsel affirmatively says there is no objection, those words matter. *See State v. Johnson*, 298 S.C. 496, 497–98, 381 S.E.2d 732, 733 (1989) (explaining a party who expressly consents to the admission of evidence has waived the right to challenge the evidence on appeal); *see also State v. Dicapua*, 373 S.C. 452, 455, 646 S.E.2d 150, 152 (Ct. App. 2007) ("As the record reflects, Dicapua's sole objection to the videotape came in the form of a motion *in*

*limine* to suppress the videotape because of its lack of audio. Once the State moved to enter the videotape into evidence and publish it to the jury, however, Dicapua's counsel specifically stated he had 'no objection.' We find this amounted to a waiver of any issue Dicapua had with the videotape."), *aff'd*, 383 S.C. 394, 680 S.E.2d 292 (2009); *Burke v. AnMed Health*, 393 S.C. 48, 55, 710 S.E.2d 84, 88 (Ct. App. 2011) ("When a party states to the trial court that it has no objection to the introduction of evidence, even though the party previously made a motion to exclude the evidence, the issue raised in the previous motion is not preserved for appellate review.").

The result would be the same even if we reached the merits. We are convinced the video did not have a material impact on the trial's outcome. *See State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) ("Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result."). Appellant's own statements to law enforcement supplied evidence far more damaging than anything contained in Minor's recorded statement. Appellant acknowledged he exposed himself while standing over Minor for the purpose of sexual arousal. He admitted he was attracted to Minor and indicated he got aroused every time she visited. He remarked, "If she was older, I'd mess with her," noted Minor was not a blood relative, and characterized the incident as losing control during a "moment of weakness."

Those statements and other damaging ones were introduced without objection and remain unchallenged on appeal. In our view, they substantially diminish any potential prejudice stemming from admitting Minor's recorded statement into evidence. The harmless error rule requires confidence that any error did not meaningfully contribute to the verdict. *See State v. Watts*, 321 S.C. 158, 165, 467 S.E.2d 272, 277 (Ct. App. 1996) ("In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such belief beyond a reasonable doubt."). In light of Appellant's statements, we are confident any error in admitting Minor's recorded statement did not contribute to the verdict.

Appellant's challenge to his own recorded interview fails for the same reason. Appellant argues the circuit court erred in admitting a portion of his interview during which the investigator asked Appellant if he was a "sex addict." Just as we are convinced any error in admitting Minor's recorded statement was harmless, we are equally convinced any error here was harmless. Appellant's admissions were highly incriminating and furnished the jury with a substantial basis for conviction.

Next, we turn to Appellant's contention that the circuit court erred in denying his request for a mistrial. Minor's mother (Mother) was the State's first witness. During cross-examination, Mother said her children went to live with their grandmother when Appellant "got out of prison." The circuit court denied Appellant's motion for a mistrial but instructed the jury to strike the statement from their minds and that it would be stricken from the record.

References to prior incarceration carry an obvious risk of prejudice, but this is not a case where an inflammatory statement created a manifest need for a new trial. *See State v. Patterson*, 337 S.C. 215, 227, 522 S.E.2d 845, 851 (Ct. App. 1999) ("A mistrial should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons."); *see also State v. Edwards*, 373 S.C. 230, 236, 644 S.E.2d 66, 69 (Ct. App. 2007) ("Granting of a mistrial is a serious and extreme measure which should only be taken when the prejudice can be removed no other way."), *aff'd as modified*, 383 S.C. 66, 678 S.E.2d 405 (2009).

Mother's remark was brief and it did not inform the jury of the details of Appellant's criminal history. The circuit court acted promptly and instructed the jury to not consider the statement. *See State v. Walker*, 366 S.C. 643, 658, 623 S.E.2d 122, 129 (Ct. App. 2005) ("Generally, a curative instruction [to disregard testimony] is deemed to have cured any alleged error."); *see also Edwards*, 373 S.C. at 236–37, 644 S.E.2d at 69 (finding an instruction to disregard the last statement of the witness was sufficient to cure any alleged prejudice). We generally presume jurors follow the court's instructions, and nothing in this record persuades us otherwise. *See State v. Young*, 420 S.C. 608, 623, 803 S.E.2d 888, 896 (Ct. App. 2017) (explaining curative instructions are deemed to have remedied prejudices because "we also presume juries follow their instructions").

Given the immediate curative instruction, we cannot say the circuit court abused its discretion in deciding the "manifest necessity" threshold for a mistrial had not been crossed. *See State v. Bantan*, 387 S.C. 412, 417, 692 S.E.2d 201, 203 (Ct. App. 2010) ("The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law.").

Last, Appellant contends his intellectual disability entitled him to an individualized sentencing hearing. Appellant relies primarily on the U.S. Supreme Court's decision in *Atkins v. Virginia* and our supreme court's decision in *Aiken v. Byars*.

*Atkins* held that intellectually disabled defendants cannot be sentenced to death because their "cognitive and behavioral impairments" result in a diminished moral culpability. 536 U.S. 304, 318–20 (2002). *Atkins* did not address a sentence of life without parole. *Id.* at 311. *Aiken* recognized "youth has constitutional significance" and held that minors cannot be sentenced to life without parole before receiving an individualized sentencing hearing. 410 S.C. 534, 543–45, 765 S.E.2d 572, 576–78 (2014). A key aspect of our supreme court's decision was the idea that minors have a greater "capacity for change" because they have not fully developed. *Id.* at 534–42, 765 S.E.2d at 575–76 (quoting *Miller v. Alabama*, 567 U.S. 460, 465 (2012)).

Appellant's argument is not without force, but adopting it requires us to travel beyond where precedent presently stops. Whether the boundaries of *Atkins* and *Aiken* should be expanded is a question we should leave for those courts to answer. *See Daniels v. City of Goose Creek*, 314 S.C. 494, 501, 431 S.E.2d 256, 260 (Ct. App. 1993) (stating "any modification or limiting of [precedent] must be done by" our supreme court because its decisions bind this court); *see also State v. Slocumb*, 426 S.C. 297, 313, 827 S.E.2d 148, 156 (2019) ("Rather than predict what the Supreme Court may or may not do, we believe the proper course is to respect the Supreme Court's admonition that lower courts must refrain from extending [precedent] beyond the line drawn by the Supreme Court.").

We are bound by precedent as it exists, and neither *Atkins* nor *Aiken* currently requires an intellectually disabled defendant to receive an individualized sentencing hearing before being sentenced to life without parole. There is no dispute that the State complied with the procedures required to seek sentencing under the three-strike statute (section 17-25-45), nor is there any dispute Appellant has the qualifying prior convictions triggering the statute. We therefore respectfully decline the invitation to break new ground in this area. *See id.* at 299, 827 S.E.2d at 149 ("Because the decision to expand the reach and protections of the Eighth Amendment lies exclusively with the Supreme Court, we are constrained to deny Slocumb relief."); *see also id.* at 313, 827 S.E.2d at 156 ("If the Supreme Court has more in mind, it will have to say what that is." (citation modified)).

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**